Mr. Larry B. Norris, Director Arkansas Department of Corrections P.O. Box 8707 Pine Bluff, Arkansas 71611-8707
Dear Mr. Norris:
This letter is a response to your request for an opinion regarding several questions arising out of Acts 1009 and 1326 of 1995.[1]
Act 1009 of 1995 amends A.C.A. § 5-4-501 (the "habitual offender" sentencing statute) to add mandatory sentences without eligibility for parole or community punishment transfer for certain two and three time violent offenders. The act excludes certain inmates who reach age 55, however, and states that they can be eligible for parole or community transfer upon reaching "regular" parole or transfer eligibility.
Act 1326 of 1995 states merely that offenders who commit certain serious violent felonies are not eligible for "parole" until they serve seventy percent of their sentence.
With regard to these two acts, you have presented the following specific questions:
Act 1009
 (1) If an inmate who is sentenced under A.C.A. § 5-4-501(c) or (d) [as amended by Act 1009 of 1995], is not eligible for parole or transfer, and the inmate reaches age 55, what is "regular parole or transfer eligibility"?
 (2) Since good time cannot be applied to reduce a sentence and these persons [the persons referred to in sections (c) and (d)] are not eligible for parole or transfer, do they earn good time?
 (3) If a person commits murder in the first degree after having been previously convicted of rape, under section (c) he is not eligible for parole or transfer. Under Act 1326, he is eligible for parole after serving 70% of his sentence. Which act would apply?
 Act 1326
 (1) Does the term "eligible for parole" mean the same thing as "eligible for transfer" since there is no longer" parole" for persons convicted of offenses after January 1, 1994? Or does section 5 of Act 1326 repeal transfer eligibility for the listed offenses?
(2) Does the inmate earn good time towards the 70% minimum?
 (3) If the inmate is sentenced under Act 1009 [A.C.A. § 5-4-501(c) and (d)] as a habitual offender, does the 70% provision of Act 1326 apply?
RESPONSE
Act 1009
Question 1 — If an inmate who is sentenced under A.C.A. § 5-6-501(c) or(d) [as amended by Act 1009 of 1995], is not eligible for parole ortransfer, and the inmate reaches age 55, what is "regular parole ortransfer eligibility?"
It is my opinion that the phrase "regular parole and transfer eligibility" refers to the eligibility for parole and transfer that is available to inmates who are not sentenced under A.C.A. § 5-4-501(c) or (d), but who are convicted of the same offenses as inmates who are sentenced under A.C.A. § 5-4-501(c) or (d).
The phrase "regular parole and transfer eligibility" is found in Section 2 of Act 1009, which states:
 Arkansas Code § 16-93-1302 is amended to add an additional subsection (f) to read as follows:
 "(f) Inmates who are sentenced under the provisions of subsections (c) or (d) of Arkansas Code § 5-4-501 for serious violent felonies or felonies involving violence may be considered eligible for parole or for community punishment transfer upon reaching regular parole or transfer eligibility, but only after reaching a minimum age of fifty-five (55) years."[2]
In seeming contrast to this provision of eligibility for parole, A.C.A. § 5-4-501(c) states:
 A defendant who is convicted of a serious felony involving violence enumerated below and who has previously been convicted on one (1) or more separate and distinct prior occasions of one (1) or more of the serious felonies involving violence enumerated below shall be sentenced to imprisonment, without eligibility of parole or community punishment transfer, for term of not less than forty (4) years nor more than eighty (80) years, or for life.
A.C.A. § 5-4-501(c)(1) (emphasis added). Similarly, A.C.A. § 5-4-501(d) states:
 A defendant who is convicted of a felony involving violence enumerated below and who has previously been convicted on two (2) or more separate and distinct prior occasions of one (1) or more of the felonies involving violence enumerated below shall be sentenced to an extended term of imprisonment, without eligibility for parole or community punishment transfer, as follows. . . .
A.C.A. § 5-4-501(d)(1) (emphasis added).
Your question brings to light what, at first blush, appears to be a conflict between A.C.A. § 5-4-501(c) and (d), and A.C.A. § 16-93-1302. However, upon closer examination, it is evident that the two sections need not be read as conflicting. Under the Arkansas Supreme Court's stated rules of statutory interpretation, I must, if possible, read these two sections as being reconcilable. The court has stated that where two statutes appear to conflict, they must be interpreted, to the extent possible, so as to give effect to both provisions. See, e.g., Kansas CitySouthern Ry. Co. v. Pledger, 301 Ark. 564, 785 S.W.2d 462 (1990); Lovev. Hill, 297 Ark. 96, 759 S.W.2d 550 (1988); Bolden v. Watt,290 Ark. 343, 719 S.W.2d 428 (1986).
Applying this rule of construction, I interpret the eligibility for parole provisions of A.C.A. § 16-93-1302(f) as creating an exception to the ineligibility for parole provisions of A.C.A. § 5-4-501, with such exception to be applied to "violent habitual offenders" who reach the age of 55 and serve the amount of time that would have made them eligible for parole if they had not been sentenced under 5-4-501(c) or (d). Under this interpretation, it will be necessary to continue to calculate parole and transfer eligibility for inmates sentenced under A.C.A. §§ 5-4-501(c) and (d), in the manner that it would have been calculated for them if they had not been sentenced under A.C.A. §§ 5-4-501(c) or (d).
If the inmates have already reached the age of 55 upon reaching the point in time when they would have been eligible for parole or transfer had they not been sentenced under §§ (c) or (d), they will, at that point, be eligible for parole or transfer; if they have not reached the age of 55 at that point, then they will be eligible for parole or transfer as soon as they do reach the age of 55. If they have already reached the age of 55 when they are sentenced, they will be eligible for parole or transfer at the same time that they would have been eligible had they not been sentenced under §§ (c) or (d).
Question 2 — Since good time cannot be applied to reduce a sentence andthese persons [the persons referred to in sections (c) and (d)] are noteligible for parole or transfer, do they earn good time?
It is my opinion that persons who are sentenced under A.C.A. §§ 5-4-501
(c) or (d) can earn good time toward parole and transfer eligibility as made available to them under A.C.A. § 16-93-1302(f), but that this good time can inure to their benefit only after they reach the age of 55.
I base this conclusion on the Arkansas Supreme Court's rule of statutory interpretation under which statutes must be read giving the words their commonly understood meanings. See, e.g., American Cas. Co. of Reading,Pennsylvania v. Mason, 312 Ark. 166, 848 S.W.2d 392 (1993). As discussed in response to your first question, persons who are sentenced under A.C.A. §§ 5-4-501 (c) and (d) can, under the provisions of A.C.A. §16-93-1302(f), become eligible for parole and transfer as though they had not been sentenced under §§ (c) or (d) upon reaching the age of 55. Because parole eligibility (under the parole laws that still govern inmates who committed crimes prior to January 1, 1994 — see A.C.A. §16-93-1301(b)) is calculated taking good time into consideration, and because transfer eligibility is also calculated taking good time into consideration (see A.C.A. § 12-29-201), it is necessary to conclude that persons sentenced under §§ (c) and (d) can earn good time, but that, of course, it may not be applied unless and until the provisions of A.C.A. § 16-93-1302(f) have gone into effect for those persons — i.e., unless and until they have reached the age of 55 and have served the requisite amount of time. Under this interpretation, it will be necessary to continue to calculate and keep track of these individuals' good time as usual.
Question 3 — If a person commits murder in the first degree after havingbeen previously convicted of rape, under section (c) he is not eligiblefor parole or transfer. Under Act 1326, he is eligible for parole afterserving 70% of his sentence. Which Act would apply?
It is my opinion that a person who is convicted of murder in the first degree after having previously been convicted of rape will be governed by the provisions of Act 1009 [A.C.A. §§ 5-4-501(c) and (d) and the statutes that must be read in conjunction therewith, such as A.C.A. §16-93-1302(f)], rather than by Act 1326 of 1995. In my opinion, Act 1326 will not apply to that person.
Act 1326 of 1995 states in pertinent part:
 Notwithstanding any law allowing the award of meritorious good time or any other law to the contrary, any person who is found guilty or pleads guilty or nolo contendere of murder in the first degree, kidnapping, aggravated robbery, rape, and causing a catastrophe shall not be eligible for parole until the person serves seventy percent (70%) of the term of imprisonment to which the person is sentenced.
Acts 1995, No. 1326, § 1. By contrast, A.C.A. §§ 5-4-501(c) and (d), quoted previously, impose specific term length requirements for specific offenses, without eligibility for parole.
The seeming conflict between the Act 1326 and A.C.A. §§ 5-4-501(c) and (d) can be resolved (as it must if possible, as explained previously) by applying the rule of statutory interpretation which provides that where two statutes address the same subject, one of which is more specific than the other, the more specific will govern. See, e.g., Sunbelt Courier v.McCartney, 31 Ark. App. 8, 786 S.W.2d 121 (1990), aff'd 303 Ark. 522,798 S.W.2d 92 (1990); Thomas v. Easley, 277 Ark. 222, 640 S.W.2d 797 (1982).
Act 1326 of 1995 and A.C.A. §§ 5-4-501 (c) and (d) have the possibility of addressing the same subject: Persons convicted of certain offenses, and their eligibility for parole. But A.C.A. §§ 5-4-501(c) and (d) are more specific with regard to that subject, in that those sections specify convictions of particular offenses under the particular circumstances of the existence of previous convictions of other particular offenses. That is, Act 1009 governs certain types of "habitual offenders." Act 1326, by contrast, is broader, having a more general applicability to conviction of a variety of offenses, absent the existence of previous convictions. Act 1326 applies even to offenders who have committed their first felony. I therefore conclude that A.C.A. §§ 5-4-501(c) and (d), being more specific as to habitual offenders than Act 1326, must control in the situation you describe. In my opinion, therefore, Act 1326 is not applicable to persons such as habitual offenders whose sentences are more specifically governed by stricter provisions.
Act 1326
Question 1 — Does the term "eligible for parole' mean the same thing as"eligible for transfer" since there is no longer "parole" for personsconvicted of offenses after January 1, 1994? Or does section 5 of Act1326 repeal transfer eligibility for the listed offenses?
It is my opinion that the phrase "eligible for parole" is not synonymous with the phrase "eligible for transfer."
The primary goal in construing statutes is to discern and give effect to the legislative intent. Bryant v. McCleod, 318 Ark. 781, 888 S.W.2d 639
(1994). In addition, words used in statutes must be given their commonly understood meaning. See American Cas. Co. of Reading, Pa., supra.
Applying these rules, it is my opinion that the legislature, in enacting Act 1326 of 1995, used the term "parole" in its commonly understood sense. In my opinion the common meaning of the term "parole" refers to the release of an offender from incarceration or imprisonment into the community. See, e.g., Tanner v. State, 259 Ark. 243, 523 S.W.2d 168
(1976). If the legislature had intended to use the term "eligible for transfer,"[3] it could have easily done so, as it did in Act 1009. Finally, the title of Act 1326 lends support to this conclusion. It is "AN ACT TO IMPOSE A MINIMUM TERM OF IMPRISONMENT BEFORE CERTAIN OFFENDERS ARE ELIGIBLE FOR PAROLE." In my opinion this language indicates an intent that these offenders not be released from imprisonment until the requisite time period is served. While the title of an act is not the law, it may be referred to in order to ascertain the intent of the General Assembly. Routh Wrecker Service, Inc. v. Wins, 312 Ark. 123,847 S.W.2d 707 (1993).
It is therefore my opinion that the legislature did not use the phrase, "eligible for parole"[4] synonymously with the phrase "eligible for transfer.[5]
In my opinion Act 1326 is a direction to the Post Prison Transfer Board in making decisions about the release of inmates who have become eligible for transfer, and who were convicted of the enumerated offenses (and who are not governed by A.C.A. § 5-4-501(c) or (d)). Act 1326 therefore must be considered in the process of calculating each inmate's release eligibility date.
An obvious result of my interpretation is that transfer eligibility dates and release eligibility dates are different and must be calculated separately, using the available statutory guidelines. Under my interpretation, an inmate could become eligible for transfer long before serving 70% of his term (under the provisions of A.C.A. § 16-93-1301), but could not be transferred to community punishment and released until after serving 70% of his term (under Act 1326).[6]
Question 2 — Does the inmate earn good time toward the 70% minimum?
It is my opinion that the inmate does not earn good time toward the 70% minimum. Act 1326 clearly states that "[n]otwithstanding any law allowing the award of meritorius good time . . ." certain inmates must serve 70% of their sentences. In addition, the provisions of A.C.A. § 12-29-201(c) state: "Meritorious good time will not be applied to reduce the length of a sentence."
In my opinion the language of both laws indicates that the 70% is to be calculated without reference to good time.
Question 3 — If the inmate is sentenced under Act 1009 [A.C.A. §5-4-501(c) or (d)] as a habitual offender, does the 70% provision of Act1326 apply?
It is my opinion that if an inmate is sentenced under Act 1009 [A.C.A. §§5-4-501(c) or (d)] as a habitual offender, the 70% provision of Act 1326 would not apply. The rationale for this conclusion is set forth above in full in response to your third question about Act 1009 of 1995.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SA/cyh
[1] You have not inquired as to the constitutionality of either of these acts; my response therefore will not address constitutional issues that may arise out of the acts. Neither will my response address policy considerations arising out of the acts, such as the effect of the acts on existing sentencing guidelines.
[2] A.C.A. § 16-93-1302(f) presents the possibility of a constitutional challenge on the grounds of equal protection. However, you have not squarely presented a question about the statute's constitutionality, and that issue will not be addressed herein.
[3] Under the community punishment statutes (specifically A.C.A. § 16-93-120(h)), the term "transfer" is defined as "an administrative condition permitting transfer of eligible offenders sentenced to traditional state correctional facilities to community punishment facilities, programming, and community supervision." This definition indicates that the phrase "eligibility for transfer" means eligibility to be considered for one of the types of community punishment. The community punishment statutes define "community punishment" to include "parole." A.C.A. § 16-93-1202(b)(14). "Parole" is defined as "an administrative condition permitting state supervision of eligible offenders sentenced to state correctional facilities and released therefrom to community punishment programs or supervision." A.C.A. § 16-93-1202(b)(14). Although the broad concept of parole has now been replaced by the concept of "transfer" in Arkansas law, the statutes still recognize an option called "parole;" it simply has been subsumed in the concepts of "community supervision" and "transfer" to community supervision. That is, parole is simply one of various types of community punishment which might be imposed upon an offender after he becomes eligible for transfer to community punishment.
[4] The distinction between the commonly understood meaning of the term "parole" and the definition of "transfer" is important, because an inmate who was not originally sentenced to community punishment can be "transferred" to continued incarceration in a community punishment facility. The definition of the word "transfer" does not necessarily mean release from incarceration as does the concept of "parole." I recognize the fact that this is not the practice — that in most all cases "transfer" does not result in continued incarceration. I also recognize the fact that, in practice, incarceration in a community punishment facility does not exceed two years. These practices are neither requirements nor restrictions of the law for inmates who were not originally sentenced to community punishment. If these practices were written into law, any distinction between "parole" (or release) and "transfer" would be meaningless. "Transfer" would, under the law, mean release (in some form). However, these practices are not written into the law. Although the law limits service in community punishment to two years for those originally sentenced to community punishment by the court (see
A.C.A. § 16-93-1206), it does not set forth any limitation on the amount of time that an offender who was not originally sentenced to community punishment may serve in community punishment. Neither does the law require that non "target group" offenders (see A.C.A. § 16-93-1202(I)(1)) not be transferred to continued incarceration in community punishment facilities. Therefore as the laws are currently worded, a non -"target group" offender can be transferred to continued incarceration in a community punishment facility, and can, theoretically, serve out the remainder of his term in community punishment. For this reason, under the law as written, an inmate who is "transferred" can either be released or can continue to be incarcerated. Therefore under the law as written, "transfer" is not synonymous with "parole" or any other type of release.
[5] To interpret the phrase "eligible for parole" in Act 1326 as being synonymous with "eligible for transfer" would create a totally different set of time periods after which the various offenders would be eligible for transfer than those set forth in A.C.A. § 16-93-1301. Such an interpretation would render meaningless the provisions of A.C.A. §16-93-1301, which state time periods after which offenders are "eligible for transfer." This reading of these statutes would be contrary the rule of statutory interpretation which presumes that legislators considered previous laws and passed later law in harmony therewith, in the absence of any express repudiation or modification. See, e.g., Jones Truck Lines v.AFCO Steel, 849 F. Supp. 1296 (E.D. Ark. 1994). Another rule of statutory interpretation that is pertinent to this situation is the prohibition against a presumption that the legislature enacted a vain or meaningless statute. See, e.g., Death and Permanent Total Disability Trust Fund v.Whirlpool Corp., 39 Ark. App. 62, 837 S.W.2d 293 (1992).
[6] The apparent goal of Act 1326 is to prohibit the release of inmates convicted of the enumerated offenses prior to their having served 70% of their terms. Although the Act specifies parole only, the Act's goal would not seem to be served by granting any form of community punishment that entails release into the community prior to the inmate's having served 70% of his term.